UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DIANA JARAMILLO,

    **Plaintiff,**

    v.                                                                     **CIV. NO. 04-363 ACT/RHS**

**MESA VISTA INDEPENDENT SCHOOL DISTRICT,**
**JOE GURULE, in his Official and Individual Capacity,**
**NELSON GONZALES, in his Official and Individual Capacity,**
**and MICHAEL D. CHAVEZ, in his Official and Individual**
**Capacity,**

    **Defendants**

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendants' Motion for Summary Judgment filed March 28, 2005. [Docket No. 35.] Defendants are seeking a dismissal of all of Plaintiff's claims pursuant to Fed. R. Civ. P. 56. Upon review of the pleadings and being otherwise advised in the premises, the Court finds that Defendants' Motion is well taken and should be granted.

**Procedural background**.

Plaintiff filed her Complaint for Damages ("Complaint") on April 1, 2004. Plaintiff alleged that the Defendants violated her constitutional, statutory and state law rights. Count 1 alleges Defendants violated Plaintiff's First Amendment right to freedom of speech; Count II alleges that Defendants violated Plaintiff's First and Fourth Amendment right to political association; Count III alleges Defendants violated Plaintiff's right to equal protection of the law under the Fourteenth Amendment; Count IV alleges that Defendants violated Plaintiff's rights under color of state law

under 42 U.S.C. § 1983; Count V alleges breach of contract; and Count VI alleges a breach of implied covenant of good faith and fair dealing. In the prayer for relief, Plaintiff requests damages including punitive damages.

In response to Defendants' Motion for Summary Judgment Plaintiff agreed to the dismissal of two Defendants, Nelson Gonzales and Michael D. Chavez. Plaintiff agreed to the dismissal of the due process and freedom of speech claims against Defendant Joe Gurule ("Gurule"). Plaintiff also agreed to the dismissal of her Fourteenth Amendment due process claims, her breach of contract and her breach of implied covenant of good faith and fair dealing claims, and her request for punitive damages. Plaintiff's remaining claims are her First Amendment right of association and the Equal Protection clause claims against Gurule and her First Amendment freedom of speech, First Amendment right of association and the Equal Protection clause claims against Defendant Mesa Vista Independent School District (" MVISD").

**Factual background**.

The following facts are undisputed. Plaintiff was employed by MVISD during the 1999-2000 school years as a special education instructor and 6th grade instructor at Ojo Caliente Elementary School. Plaintiff had a employment contract with the MVISD during this time. Gurule was the school principal at Ojo Caliente Elementary School and Plaintiff's immediate supervisor. A condition of her employment was reassignment if the need arose.

At the end of the 1999-2000 school year Plaintiff was offered employment solely in the position of special education instructor at Ojo Caliente Elementary School. Gurule remained the school principal at Ojo Caliente Elementary School and continued to be Plaintiff's immediate supervisor. Again, reassignment, if the need arose, was a condition of Plaintiff's employment.

Vernon Jaramillo was the Superintendent for MVISD ("Superintendent" or Superintendent Jaramillo") during the 1999-2000 and 2000-2001 school years. Plaintiff is related to Superintendent Jaramillo.

On February 6, 2001, an election was held for members of the school board. Two newly elected board members started in their positions on March 1, 2001. The composition of the new school board was Cornelio Lopez, Alfonso Chacon, Jr., Joe L. Trujillo, William Romero and Guadalupe Moya ("the Board"). On April 24, 2001, the Board offered Plaintiff employment as a special education instructor at Ojo Caliente Elementary School.

On May 29, 2001, upon the recommendation of Superintendent Jaramillo, the Board reassigned Plaintiff from Ojo Caliente Elementary School to the Mesa Vista Middle and High School.[1] Six employees were reassigned. Three of the six assignments involved the Plaintiff, her mother, Fidelia Jaramillo, and her sister, Denise Lopez. Gurule made no recommendations to the Board regarding the reassignments [2]

The newly composed board served three months and met four times before the reassignments. On July 30, 2001, the Board assigned Plaintiff back to the Ojo Caliente Elementary School.

**Legal standard**.

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, demonstrate that there is no genuine issue of

---

[1] Plaintiff asserts that Superintendent Jaramillo recommended the reassignment because the Board would have fired him if he did not. Plaintiff relies on the testimony of Fidelia Gallegos Jaramillo. Assuming that this is material to the issues before the court, the Court finds that it is inadmissible hearsay and will not be considered. Fed.R.Evid. 801 and 804.

[2] Plaintiff attempts to dispute this fact by asserting that Gurule had a relationship with the three Board members that voted for Plaintiff's reassignment. Having a relationship with Board members and whether Gurule made a recommendation to the Board regarding the reassignments are two different matters.

material fact, and the moving party is entitled to judgment as a matter of law. *Celotex v. Catrett,* 477 U.S. 317, 322 (1986). The opposing party may not rest upon mere allegations and denials in the pleadings, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). An issue of fact is genuine if the evidence is significantly probative or more than merely colorable such that a jury could reasonably return a verdict for the non-moving party. *Id*. at 248. Mere assertions or conjecture as to factual disputes are not enough to survive summary judgment. *Branson v. Price River Coal Co.*, 853 F.2d 768, 771-72 (10th Cir. 1988).

**Discussion**.

  *1.     42 U.S.C. § 1983 related claims against MVISD.*

Plaintiff is seeking to impose liability on the MVISD for violation of her First Amendment rights and under the Equal Protection clause through asserting a claim under 42 U.S.C. § 1983.[3] A plaintiff seeking to impose liability on a school board [4] under § 1983 must identify a board "policy" or "custom" causing an injury. *Monell v. Department of Social Services of City* of *New York*, 436 U.S. 658, 690-91 (1978); *Gates v. United School Dist No*. 449, 996 F.2d 1035, 1041 (10th Cir. 1993). A policy is a statement, ordinance, regulation or decision officially adopted and promulgated by the board. *Lankford v. City of Hobart*, 73 F.3d 283, 286 (10th Cir. 1996). A custom is a existence of a "continuing widespread, persistent pattern of misconduct" that has been "so permanent and well settled" as to have the effect and force of law. *Monell*, 436 U.S. at 691.   Policy or custom

---

[3] 42 U.S.C. § 1983 is not an independent source of substantive rights but rather a mechanism for enforcing federal rights conferred elsewhere. *Graham v. Connor*, 490 U.S. 386, 393-94  (1989).

[4]   The local school board is the "policy setting body of a school district."  § 22-1-2(H) NMSA 1978.

can be identified in any of three ways: (1) an express policy that, when enforced, causes a constitutional deprivation, (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law, or (3) an allegation that the constitutional injury was caused by a person with final policy making authority. *Boyer v. Board of County Com'rs of County of Johnson County*, 922 F. Supp. 476, 488 (D. Kan. 1996) (*citing Monell*, 436 U.S. at 690). Plaintiff is relying on the last theory and asserts that the Board's decision to reassign Plaintiff was a policy that injured her.

Under this theory, only a final policymaker may be liable for an alleged constitutional violation.[5] Whether an official or board has policy making authority depends upon state law. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124 (1988). The New Mexico statute regarding assigning employees of the school district states:

> "The local superintendent shall:...(3) employ, fix the salaries of, assign, terminate or discharge all employees of the school district;..."

§ 22-5-14, NMSA 1978.

In this matter, it is undisputed that Superintendent Jaramillo recommended to the Board that Plaintiff be reassigned and that the Board carried out that recommendation. Even though the Board may have taken the final step, under New Mexico law the decision that Plaintiff is basing her claim on was made by the superintendent and therefore the Board is not liable under § 1983.

Even if the Court were to find otherwise, there is insufficient evidence to identify an

---

[5] An example given by Justice Brennan is that when a board had established employment policies and had given final hire and fire authority to an official, the board cannot be held liable for the official's unconstitutional exercise of authority because that decision was not a decision of the board. *Pembaur v. Cincinnati*, 475 U.S. 469, 483, n. 12. (1986) However, if the official had been delegated final responsibility for establishing employment policy, then the board could be held liable. *Id*.

unconstitutional policy or custom by the Board or Superintendent Jaramillo regarding reassignment. A "policy" has been defined as "a course of action [consciously chosen] from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur*, 475 U.S. at 483-84. A custom is "[t]he existence of a continuing, persistent and widespread practice of unconstitutional misconduct..." *Gates*, 996 F.2d at 1041. The facts of record are that the Board had been in existence only three months and held only four meetings prior to the reassignment at issue. Six employees were reassigned at the time Plaintiff was reassigned. Plaintiff, her mother and sister, who are related to the Superintendent, were among those reassigned. There are no facts concerning the other three employees that were reassigned. There were no reasons given for the reassignment. Depo. of F. Jaramillo, p. 28-29. In Plaintiff's offers of employment, a specifically stated condition was that her employment was "[s]ubject to Re-assignment if the need arises." Exhibits A and K to Defendant's Memorandum in Support. In addition, it is undisputed that the reassignment was rescinded only two months after it was made. MVISD is not liable to the Plaintiff. There is no evidence of a policy, custom or act by a final decision maker that allegedly violated Plaintiff's constitutional rights.[6] On this ground alone all claims against MVISD must be dismissed. *Monell*, 436 U.S. at 694.

---

[6] Plaintiff does not assert, and there is no evidence in the record to support an assertion that the actions of Gurule would impose any liability on MVISD. *Monell,* 436 U.S. at 694 ("a local government may not be sued under § 1983 for an injury inflicted soleby by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may be fairly said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.") Moreover, as discussed below, Gurule did not violate Plaintiff's constitutional rights.

2. *First Amendment retaliation claims against MVISD.*

   a. *First Amendment freedom of speech.*[7]

Even if Plaintiff could prove an official policy or custom regarding reassignment or that MVISD was the final policy maker that made the decision to reassign her, she has not established that the MVISD violated her First Amendment right to freedom of speech.

A public employer cannot retaliate against an employee for exercising her constitutionally protected right of free speech. *Dill v. City of Edmond*, 155 F.3d 1193, 1201 (10th Cir. 1998). The Tenth Circuit employs the *Pickering* test to evaluate whether the action of a public employer impermissibly infringes on an employee's free speech rights. [8] *Pickering v. Board of Education,* 39 As explained in *Martin v. City of Del City*, 179 F.3d 882, 886 (10th Cir. 1999):

> Our initial inquiry under [the Pickering] test is to determine whether the public employee's speech at issue touches upon matters of public concern. Connick, 461 U.S. at 146, 103 S. Ct. 1684. If this is so, the court then must balance the interest of the public employee in making the statement against the government-employer's interest "in promoting the efficiency of the public services it performs through its employees." Pickering, 391 U.S. at 568, 88 S.Ct. 1731.

> If such balancing favors the plaintiff, he next must show that the constitutionally protected expression was a motivating factor in the adverse employment decision. Mount Healthy City Sch. Dist. v. Doyle, 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). Last, if the plaintiff satisfied the above elements, the burden shifts to the employer to show by a preponderance of the evidence that it would have made the same employment decision "even in the absence of the protected conduct." Id.

The first two questions are questions of law, while the latter two are questions of fact. *Martin*, 179

---

[7]Plaintiff appears to concede she has no claim for violation of her right to freedom of speech as she did not respond to Defendants' arguments in her Response brief.

[8] Defendants erroneously rely on *Worrell v. Henry*, 219 F.3d 1197 (10th Cir. 2000), *cert denied*, 533 U.S. 916 (2001). The analysis in *Worrell* is used when the plaintiff is not an employee and no contractual relationship exists between the parties.

F.3d at 886.

To determine whether speech touches on a matter of public concern, the Court must determine whether it can be fairly considered as relating to any matter of political, social, or other concern to the community. *Connick*, 461 U.S. at 146. This requires an analysis of the content, form and context of a given statement, as revealed by the whole record. *Id*. at 147-48. "To be protected speech, the expression must 'sufficiently inform the issue as to be helpful to the public in evaluating the conduct of government.'" *Withiam v. Baptist Health Care*, 98 F.3d 581, 583 (10th Cir. 1996). In *Withiam* the expression at issue was a resolution to a hospital's board of trustees opining that the current management company should be retained. The resolution did not offer any reasons or explanation for the opinion expressed. It was not "an expose of government ineptitude, waste, or corruption nor a recitation of reasons, argument or facts supporting retention of contract management." *Id*. Thus, the Court found that the speech did not warrant First Amendment protection. *Id*.

Here, Plaintiff asserts that she was reassigned because she supported Superintendent Jaramillo. The Court has reviewed excerpts from the deposition of the Plaintiff which she has submitted in support of her claims. When asked what she said in support of Superintendent Jaramillo Plaintiff responded:

"A.    They were statements in support of Superintendent Vernon Jaramillo.

Q.    What statements exactly did you make?

A.    Well, it was – Well, it was known to everyone that we supported him.

Q.    I need you to think a bit about who you made those statement to.

A.    Well, it was known.

8

> Q. Do you know where you were making these statements?
>
> A. I think in general. Just anywhere. I didn't keep that a secret, that I supported him. Like I say, I had a lot of respect for him, for what he had done for our students."

Exhibit B to Plaintiff's response, Depo. of Diana L. Jaramillo, p. 100.

> "Q. Were you in support of Mr. Jaramillo's initiatives at the school district?
>
> A. Yes. I believe that Mr. Jaramillo was an excellent superintendent, and he did everything in the best interests of the students.
>
> Q. And did you continue to voice your opinion in that regard?
>
> A. I probably did, and like I say, it's a small community and everybody knew. So there was no question as to who we supported."

*Id*. at p. 122.

The Plaintiff also relies on the deposition testimony of Fidelia Jaramillo, her mother and a library assistant for the school district. Fidelia Jaramillo testified as follows:

> "Q. We were just talking about what Ms. Jaramillo [Plaintiff] has described as her political affiliation with Vernon Jaramillo, and you said she supported him. Can you tell me how she supported him?
>
> A. Well, she supported him by voting for the candidates that she thought would support him.
>
> Q. Okay. Did she do anything else aside from that?
>
> A. Not that I know of."

Exhibit E to Plaintiff's response, Depo. of F. Jaramillo, p. 12-13.

Diana Lopez, Plaintiff's sister and a counselor with the school district, has also testified by

9

deposition in this matter and Defendants have attached parts of her deposition which state in part:

"Q.    Do you have any personal knowledge about the manner in which she [Plaintiff] demonstrated her support with Mr. Jaramillo?

A.    I guess much in the same way that we all did:  We tried to help him accomplish goals for students."

Exhibit V to Defendants' Memorandum in Support, Depo. of Diana Lopez, p. 9.

Plaintiff contends that her support of Superintendent Jaramillo is protected under the First Amendment. Plaintiff does not point to any particular statement she has made. As shown above, what she has alleged to have expressed could more accurately be described as support rather than"speech," but the Court will analyze Plaintiff's contentions as though her conduct was "speech."

Plaintiff's statements do not constitute a matter of public concern. Her "speech" is a general support of the policies and initiatives of Superintendent Jaramillo. Support of Superintendent Jaramillo's policies and initiatives do not warrant constitutional protection. Plaintiff's statements are not specific enough as to be helpful to the public in evaluating the conduct of a government official. *Connick*, 461 U.S. at 147-48. In determining whether speech is of public concern "it is not always enough that its subject matter could in [certain] circumstances, [be] the topic of a communication to the public that might be of general interest. What is actually said on the topic must itself be of public concern." *Koch v. City of Hutchinso*n, 847 F.2d 1436, 1445 (10th Cir. 1988) (en banc) (internal quotations marks omitted; brackets in the original). Here, Plaintiff has submitted insufficient evidence of what she actually said.

Plaintiff has not met her burden of showing that she engaged in protected speech. Thus her claim of First Amendment retaliation against the MVISD for exercising her right to freedom of speech

must also fail for this reason as well. *David v. City and County of Denver*, 101 F.3d 1344, 1355 (10th Cir.1996) (Speech relating to internal personnel disputes and working conditions ordinarily will not be viewed as addressing matters of public concern.); *Woodward v. City of Worland, Wyoming*, 977 F.2d 1392, 1403 (10th Cir.1992) (sexual harassment complaints addressed personal matters).

Though not required in this analysis, the Court also notes there is no question of fact that Plaintiff's support of Superintendent Jaramillo was a "motivating factor" for her reassignment. *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977). Although retaliation against protected speech need not be the only factor leading to the adverse employment decision, a plaintiff must prove that it played a substantial role. *Id*.

A review of the deposition testimony shows there is no evidence that anyone told the Plaintiff why she was reassigned. The only evidence from the Plaintiff is that she knew she could be reassigned if the need arose and she believed she was reassigned because of her political association with Superintendent Jaramillo. Depo. of Diana L. Jaramillo, p. 18, 119. The deposition testimony of Fidelia Jaramillo concerning this matter is not helpful to the Plaintiff:

> "Q. And how did this whole discussion about reassignment come up during the Board meeting?
>
> A. There was no discussion. We just got reassigned.
>
> Q. Did any Board member say why the reassignments were going to take place?
>
> A. When?
>
> Q. Did they ever say why the reassignments were going to happen?
>
> A. No.
>
> Q. Do you know who recommended the reassignments?

      A.      No, I don't."

Depo. of F. Jaramillo, p. 28-29.

As previously stated Fidelia Jaramillo testified that Superintendent Jaramillo was going to testify that he was pressured by these Board members to reassign the six individuals. This is inadmissible hearsay. However, even if admissible, this evidence is not material. There is no evidence why he was pressured.

      *b.*      *First Amendment right to association.*

Plaintiff also asserts a claim for violation of her First Amendment right of association against the MVISD. The Supreme Court has recognized two types of association protected by the First Amendment: 1) intimate relationships; and 2) expressive relationships-associations. Though Plaintiff believes that she and Superintendent Jaramillo are fourth cousins, there is no allegation that the Plaintiff's right to an "intimate association" was affected. Rather Plaintiff asserts because she had a "political affiliation[]" with Superintendent Jaramillo, Defendants reassigned her. Complaint, ¶ 23.

The First Amendment protects the "right to associate for the purposes of engaging in those activities protected by the First Amendment--speech, assembly, petition for the redress of grievances, and the exercise of religion." *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 678 (2000). Public employees cannot be discriminated again based upon their political beliefs, affiliations, or non-affiliation unless their work requires political allegiance. *Good v. Board of Cty. Commrs of Swanee*, 331 F. Supp. 2d 1315, 1326 (D. Kan. 2004).

When the free speech and free association claim are identical or closely related, the *Pickering* tests is applied. *Beach v. City of Olathe*, 185 F. Supp. 2d 1229, 1237 (D. Kan. 2002); *Schalk* 906

at 498, n.6. Thus, the initial inquiry is whether Plaintiff's association with Superintendent Jaramillo touched upon matters of public concern. Here, Plaintiff's association with Superintendent Jaramillo was to give him general support for his policies and initiatives. Plaintiff's act of association and support of Superintendent Jaramillo does not meet the public concern requirement.

Moreover, as discussed, *supra*, the evidence does not demonstrate that Plaintiff was reassigned because of her association with Superintendent Jaramillo. *Jantzen v. Hawkins*, 188 F.3d 1247, 1251 (10th Cir. 1999) (plaintiff must establish a genuine dispute of fact that political affiliation and/or beliefs were "substantial" or "motivating" factors behind the adverse employment action). Plaintiff argues that of the six reassigned employees, three were supporters of the Superintendent. Plaintiff also argues that the two board members who voted against the reassignments said these employees should not have been reassigned because there had been no complaints regarding the performance of any of the three supporters of the Superintendent. Depo. of F. Jaramillo, 34, 35. This is inadmissible hearsay. More importantly, as discussed above, Plaintiff agreed and knew she could be reassigned if the need arose. Assuming no performance issues, there are many reasons for reassignment other than support for the Superintendent. Thus, no reasonable inference can be drawn that her support of the Superintendent was the reason. As discussed, *supra*, Plaintiff has not met her burden. There is no evidence in the record regarding any political motivation behind the employment action. Further, there was no campaign or election for the position of Superintendent. The evidence demonstrates that Plaintiff merely voted for school board candidates she thought would be loyal to the Superintendent. Therefore, it can not be reasonably inferred that the Board's action of reassigning the Plaintiff was motivated by their disregard for Plaintiff's First Amendment rights.

   3.  *Joe Gurule*

### a.    *First Amendment right to association.*

Plaintiff asserts that Gurule violated her First Amendment right to association. At the relevant times, Gurule was the Principal at Ojo Caliente Elementary School. Complaint, ¶ 3. Plaintiff bases this claim on the same allegation as her association claim against MVISD. *Id*. at ¶ 23. Plaintiff believes that Gurule had a role in the reassignment because Gurule was supporting and had a relationship with the Board members who voted to reassign her. Depo. D. Jaramillo, p. 92. Other than Plaintiff's belief, Plaintiff has offered no evidence in support of her claim. Plaintiff's belief does not raise an issue of material fact. *Yumukoglu v. Provident Life & Accident Ins. C*o., 131 F. Supp. 2d 1215, 1227 (D.N.M. 2001) ("Conclusory allegations, without specific supporting facts, have no probative value and are therefore insufficient to create a genuine issue of material fact."); *Branson,* 853 F.2d at 772 (plaintiff's mere conjecture is an insufficient basis for denial of summary judgment). The undisputed evidence is that the Superintendent recommended to the Board that Plaintiff be reassigned and the Board approved the reassignment. There is no evidence Gurule was involved. Furthermore, as discussed above, Plaintiff cannot prevail because her association with the Superintendent does not touch on matters of public concern and she has not proven that this association was the motivating factor behind the reassignment.

### b.    *Equal protection.*

The equal protection clause is triggered when the government treats someone differently than another who is similarly situated. *Buckley Constru., Inc. v. Shawnee Civic & Cultural Dev. Auth*., 933 F.2d 853, 859 (10th Cir. 1991) (*citing City of Cleburne v. Cleburne Living Ctr*., 473 U.S. 432, 439 (1985). The equal protection clause protects not only against discrimination where victims within an identified classification or group are injured, but also where the plaintiff alleges an element

of intentional or purposeful discrimination so as to invoke the clause to protect an individual claim. *Bartell v. Aurora Public Schools,* 263 F.3d 1143, 1148 (10th Cir. 2001). Plaintiff alleges that Defendant violated the equal protection clause of the Fourteenth Amendment under a class-of-one theory. To show a constitutional violation under the class-of-one theory, the Plaintiff must establish two elements: (1) that the Defendant acted with discriminatory intent; and (2) that the Defendant treated the Plaintiff differently from others who are similarly situated without a rational basis for doing so. *Id.* at 1149. To establish discriminatory intent, the Plaintiff must show that the Defendants' actions were a spiteful effort to "get" the Plaintiff for reasons wholly unrelated to any legitimate state objective. *Id.*

When asked how she was treated differently Plaintiff testified:

1. She was treated differently than Ms. Avis Villareal ("Villareal") and Ms. Amanda Maestas ("Maestas) because they were tardy but that was not noted on their evaluations and when she was tardy, it was noted on her evaluation. Depo. of D. Jaramillo, p. 53-55.

2. When Bernie Sena ("Sena")was out of her classroom she was not reprimanded. However, Plaintiff acknowledged she was never out of her classroom so she cannot say if she would have been reprimanded. *Id.* at 42.

The remaining testimony on this matter consists of Plaintiff's allegations that Gurule and Sena treated her unfairly:

1. Gurule would cancel the PE class he was supposed to teach and she would end up with the students. *Id.* at. 19.

2. She told Gurule that the special education files were deficient and he did not seem

15

> to care. *Id.* at 29-30.

3. Sena and Gurule made unfair accusations that her students were sleeping in class or were out of class. *Id*. at 33-34.

4. Sena used the word "nigger" in a class which Plaintiff's nephew attended. *Id*. at 34. Plaintiff is marred to an African-American. *Id*. Gurule apologized for Sena.

5. When Plaintiff was reassigned, Gurule called and asked her in a rude manner to remove her stuff. *Id*. at 42.

6. Gurule distributed or was responsible for distributing a pamphlet entitled "Don't Panic." It was given to everyone but the Plaintiff. Id. at 48-49.

7. Gurule gave Plaintiff a late evaluation and only 1 of 2 required evaluations. *Id*. at 63.

8. Gurule scheduled meetings that Plaintiff was unable to attend because she was teaching class. *Id*. at 78.

Plaintiff offers no evidence sufficient to establish a genuine issue of material fact that she was similarly situated to Maestas, Villareal and Sena and that those similarly situated persons were treated differently. The only facts in the record about these three individuals is that they were employed at the same school as the Plaintiff and Sena was a teacher. Plaintiff has offered no evidence that these persons are identical. There is no evidence in the record of the Plaintiff's evaluations or the evaluations of Sena, Villareal and Maestas.

In discussing the importance of only applying the class-of-one theory to equal protection clause claims involving unequal treatment of identical persons, Judge Posner wrote:

> The concept of equal protection is trivialized when it is used to subject every decision made by state or local government to constitutional review by federal courts. To decide is to

16

> choose, and ordinarily to choose between--to choose one suppliant, applicant, petitioner, protester, contractor, or employee over another. Can the loser in the contest automatically appeal to the federal courts on the ground that the decision was arbitrary and an arbitrary decision treats likes as unlike and therefore denies the equal protection of the laws?

*Indiana State Teachers Assn. v Board of Sch. Comm'rs. of the City of Indianapolis,* 101 F.3d 1179, 1181 (7th Cir. 1996).

In failing to provide any specific facts about the other employees, Plaintiff does not offer evidence showing she was similarly situated to them. Because offering evidence of being similarly situated is a prerequisite under an equal protection claim Plaintiff does not create a genuine issue of material fact as to whether a constitutional violation occurred. *Jennings v. City of Stillwater*, 383 F.3d 1199 (10th Cir. 2004) ("Nowhere in the over 550 pages of evidence submitted by Plaintiff to the district court does she supply any information regarding the allegedly similarly situated rape victims.") Thus, the equal protection claim against Gurule will be dismissed.

Finally, Gurule has asserted a defense of qualified immunity. To overcome this defense, Plaintiff must show that: (1) the individual defendant's conduct violated a constitutional or statutory right, and (2) the law governing the conduct was clearly established at the time of the alleged violation. *Baptiste v. J.C. Penney Co.*, 147 F.3d 1252, 1255 (10th Cir.1998). Because Plaintiff has not sufficiently shown a constitutional violation on either her First Amendment or Equal Protection claims, the Court will not address the second prong of the qualified immunity standard.

### 4.     *Equal protection claim against MVISD*

MVISD is the only remaining defendant on the equal protection claim. A governmental entity may not be held liable for constitutional violations where there is no underlying constitutional violation by any of its officers. *Hinton v. City of Elwood,* 997 F.2d 774, 782 (10th Cir. 1993) (citing

*City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *Myers v. Oklahoma county Bd. of County Commrs*, 151 F.3d 1313, *1316* (10th Cir. 1998 (It is well established, therefore, that a municipality cannot be liable under section 1983 for the acts of an employee who committed no constitutional violation).  As the Court finds that Gurule did not violate Plaintiff's constitutional rights, the equal protection claim aginst MVISD based upon Gurule's conduct must be dismissed.

Moreover, to the extent that the Plaintiff alleges that a class-of-one claim against MVISD, Plaintiff's claim must fail.  Six employees were reassigned.  Plaintiff alleges that three of them were supporters of the Superintendent.  Plaintiff is not in a class-of-one.  Moreover, Plaintiff failed to allege or submit any evidence of those similarly situated, i.e. those that were not reassigned.  Thus, any equal protection claim Plaintiff asserts against MVISD will be dismissed.

**Conclusion**.

For the reasons set forth above, the Court finds that summary judgment should be granted to the Defendants on all claims.

**IT IS THEREFORE ORDERED** that Defendants' Motion for Summary Judgment (Docket No. 35) is granted and all claims against the Defendants are dismissed with prejudice.

                                      **ALAN C. TORGERSON**
                                      **UNITED STATES MAGISTRATE JUDGE,**
                                      **PRESIDING**